UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IN THE MATTER OF<br>GIL E. TALLMAN<br>CASE NO. 07-12473<br><br>    Debtor.<br>_____<br><br>SECURITIES AMERICA, INC.,<br><br>    Appellant,<br><br>v.<br><br>GIL E. TALLMAN,<br><br>    Appellee. | CAUSE NO.: 1:08-CV-309-TS |

**OPINION AND ORDER**

In this matter, Securities America, Inc., appeals the November 12, 2008, Order of the Bankruptcy Court denying its Motion to Dismiss. For the reasons set forth below, the Bankruptcy Court's Order will be reversed, and this matter will be remanded to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

**PROCEDURAL BACKGROUND**

On August 31, 2007, Gil E. Tallman, the Debtor-Appellee, filed a petition for relief under chapter 7 of the United States Bankruptcy Code. At that time, he also filed statements related to his financial situation and other documents. On September 10, Tallman filed Schedules A-J including Summary and Statistical Information and Statement of Financial Affairs. On October 10, the first meeting of creditors under § 341 was held, and on October 11, the chapter 7 trustee filed his Initial Report. On October 24 and November 1, a chapter 7 trustee-initiated and court-

ordered Rule 2004 examination was conducted.

On November 28, Securities America, the Creditor-Appellant, filed a Motion to Dismiss [DE 2-6], a Brief in Support, and a substantial body of supporting/evidentiary materials. On December 6, Securities America filed a Motion for Extension of Time for Filing Discharge Objections and Dischargeability Complaints and Notice Thereof [DE 3-3]. On December 19, Tallman filed an Objection to Securities America's Motion for Extension of Time [DE 3-4]. On January 6, 2008, Tallman filed an Objection [DE 3-6] to Securities America's Motion to Dismiss. On January 11, Securities America filed a Brief in Support of its Motion for Extension of Time [DE 2-7 & 3-7]. On January 14 (with a corresponding written Order [DE 4-3] issued on January 16), the Bankruptcy Court set this matter for trial on Securities America's Motion to Dismiss and denied Securities America's Motion for Extension of Time. At the January 14 hearing, the chapter 7 trustee indicated his support of Securities America's Motion to Dismiss. (Jan. 14, 2008, Tr. 5, DE 10.)

On January 13, which was the day before the Bankruptcy Court's hearing on Securities America's Motion to Dismiss and Motion for Extension of Time and forty-six days after Securities America filed its Motion to Dismiss and supporting materials, Tallman filed a series of amended schedules (Schedules A, B, C, E, F, I, and J) and documents (First Amended Statement of Financial Affairs and First Amended Statement of Current Monthly Income and Means Test) [DE 3-8, 3-9, 3-10]. On January 31, Tallman further supplemented and amended schedules and documents. On February 28, Securities America filed a Motion for Summary Disposition of Motion to Dismiss or Alternatively for Continuance of Trial Date, and Tallman filed an Objection to this Motion.

On March 3, the parties filed a joint Stipulation of Undisputed Facts, Joint Exhibit List, and Witness Lists [DE 2-8]. On March 4 and 5, the Bankruptcy Court conducted a trial on Securities America's Motion to Dismiss. On March 27, Securities America submitted a Post-Trial Brief [DE 2-9], and on April 10, Tallman submitted a Response Brief [DE 4-7]. On April 15, Securities America submitted a Post-Trial Reply Brief [DE 2-10]. On November 12, the Bankruptcy Court issued a Decision on Motion to Dismiss [DE 2-4] and an Order [DE 2-3] denying Securities America's Motion to Dismiss.[1]

On November 21, Securities America filed a Notice of Appeal [DE 1]. The Notice of Appeal indicates that Securities America is appealing the November 12, 2008, Order of the Bankruptcy Court denying its Motion to Dismiss. On November 26, Securities America filed a Designation of Items for Record on Appeal and Statement of Issues to Be Presented [DE 2-5], identifying the following two issues on appeal: (1) whether the Bankruptcy Court erred in denying Securities America's Motion to Dismiss; and (2) whether dismissal of Tallman's bankruptcy petition is warranted as a bad faith filing under § 707(a) of the Bankruptcy Code. On January 30, 2009, Securities America filed its Appeal Brief [DE 16]. On February 24, Tallman filed his Brief [DE 19], and on March 11, Securities America filed its Reply Brief [DE 20]. On June 25, the Court conducted a hearing with the parties. Both parties presented argument regarding their respective positions on this appeal of the Bankruptcy Court's ruling.

---

[1] The Bankruptcy Court's Decision is attached to this Opinion and Order.

## JURISDICTION AND STANDARDS OF REVIEW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1), which gives district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. In this appeal of the Bankruptcy Court's ruling, the Court reviews the Bankruptcy Court's determinations of law *de novo* and its findings of fact for clear error, but on issues that the Bankruptcy Code has committed to the discretion of the bankruptcy court, the Court reviews such decisions only for an abuse of discretion. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). Mixed questions of law and fact are subject to *de novo* review. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008). Under Seventh Circuit precedent, a court "'abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied.'" *Wiese*, 552 F.3d at 588 (quoting *Corporate Assets, Inc. v. Paloian,* 368 F.3d 761, 767 (7th Cir. 2004)). The decision whether to grant a motion to dismiss a chapter 7 case lies within the discretion of the bankruptcy court. *In re Hopper*, 404 B.R. 302, 307 (citing *Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1063 (5th Cir. 1988); *Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624 (9th Cir. BAP 1995); *Turpen v. Eide (In re Turpen)*, 244 B.R. 431, 433 (8th Cir. BAP 2000)).

## FACTUAL BACKGROUND

Many of the facts in this case are not disputed by the parties. The following statement of facts and background facts is drawn from the parties' joint Stipulation of Undisputed Facts. This summation does not, however, address the full range of facts and circumstances relevant to

Tallman's alleged bad faith, which the Bankruptcy Court must develop and find in the first instance on remand.

A.  **Tallman's Business, Companies, and Income**

Tallman is in the business of selling indexed annuities, long-term-care insurance, and other insurance products. From 1987 to approximately July 2006, he operated his business under Premier Financial Group, Inc., which is owned by Tallman and three other shareholders. Immediately prior to July 2006, it was Tallman's business practice to assign his rights to receive commissions from his sale of insurance products to Premier Financial Planning, Inc., which is owned by Tallman's son-in-law and another individual, purportedly in consideration for Premier Financial Planning referring clients to Tallman. Premier Financial Planning would, in turn, pay Tallman as compensation a "fixed" monthly amount of $4500, a health insurance "reimbursement" of $500 per month, plus "additional" amounts "based upon how well the company was doing." (Stip. ¶ 11, DE 2-8.) Premier Financial Planning would also pay Premier Financial Group amounts necessary to cover the company's operating expenses, such as office rent and supplies. The arrangement among Tallman and the two Premier corporations was not evidenced by a written agreement, and no agreed-upon formula or percentage determined the "additional" amounts required to be paid Tallman by Premier Financial Planning.

In July 2006, Tallman formed Alpha-Omega Consulting, Inc., and he has been and remains the sole director and officer of Alpha-Omega. The stock of Alpha-Omega is owned entirely by Tallman and his immediate family members, with 20% owned by Tallman himself, 20% by Tallman's wife, and the remaining 60% by Tallman's two daughters and son-in-law.

None of Tallman's family members contributed capital or other consideration in exchange for their shares in Alpha-Omega, and the sole source of revenue for Alpha-Omega is Tallman's sale of insurance products. Following the formation of Alpha-Omega, Tallman began assigning his rights to receive commissions from the sale of insurance products to Alpha-Omega, rather than to Premier Financial Planning. Prior to 2007, Tallman's employment arrangement with Alpha-Omega consisted of a monthly salary payment of $6000, a health insurance "reimbursement" of $500 per month, plus a distribution of all net earnings derived by Alpha-Omega from Tallman's sale of insurance products. Tallman's arrangement with Alpha-Omega was not evidenced by a written agreement.

In calendar year 2006, Tallman had gross income and earnings in the amount of $214,679.08, virtually all of which was derived from his sale of insurance products. In that year, he received $59,337.52 from Premier Financial Planning; $21,000 from Alpha-Omega as salary; $131,170 from Alpha-Omega as net-earnings distributions; and $3171.56 from prize winnings. In calendar year 2006, Alpha-Omega received $292,989 in gross revenues from Tallman's sale of insurance products.

In 2007, Tallman and his family members reduced the compensation Alpha-Omega would pay to Tallman as follows: rather than distributing net earnings, Alpha-Omega would pay Tallman a $15,000 "bonus" for the first $100,000 in gross revenue derived by Alpha-Omega from Tallman's sale of insurance products, and a second "bonus" for the next $150,000 in gross revenue that resulted from his sale of insurance products. These "bonus" payments would be in addition to the $6000 per month salary and the $500 per month insurance "reimbursement" paid to Tallman. Tallman's arrangement with Alpha-Omega was not evidenced by a written

agreement. On August 7, 2007, Tallman received the first $15,000 "bonus" payment from Alpha-Omega.

In 2007, Tallman and his family members decided that Alpha-Omega would hire Tallman's wife as an office assistant, even though Alpha-Omega already employed a full-time office assistant. Tallman's wife was paid approximately $3000 per month in salary, starting in May 2007, based on a 40-hour workweek, although she typically worked fewer than 40 hours per week. Her duties included filing and database entry. Tallman's wife's base salary was higher than the base salary of the other full-time office assistant, even though Tallman's wife performed considerably less work and was less "valuable" to the company than the other office assistant. (Stip. ¶ 37, DE 2-8.) Alpha-Omega generated $271,628 in gross revenue in calendar year 2007 from Tallman's sale of insurance products. For calendar year 2007, Tallman was entitled to receive the second $15,000 "bonus" payment from Alpha-Omega based on its gross revenues. Tallman contends that Alpha-Omega paid the following dividend amounts for calendar year 2007: Tallman—$2009; Tallman's wife—$2009; and Tallman's two daughters and son-in-law—$6028.

**B.     Securities America's Arbitration of Dispute with Tallman and Award**

In May 2006, just prior to some of the significant changes in Tallman's business practices that are outlined above, Securities America commenced an arbitration proceeding against Tallman. On May 10, 2007, in connection with the arbitration proceeding, Tallman submitted financial statements that his attorney represented reflected Tallman's financial status and income. Tallman offered to settle the arbitration by paying Securities America a total amount

of $150,000, with a $30,000 immediate payment and a $1000 payment per month for a period of ten years.

On June 26, 2007, the arbitration panel entered an award in favor of Securities America and against Tallman in the amount of $510,000, plus interest. In July 2007, Securities America initiated a civil action in a Nebraska state court, seeking to confirm the arbitration award. On August 31, 2007, Tallman filed his original bankruptcy schedules and Statement of Financial Affairs.

### C. Tallman's Reaffirmation of Debts with Other Creditors

Tallman has executed agreements reaffirming the following debts with creditors: first and second mortgage debts on his residence; debt for a vacation time share property; vehicle loan debt; and an unsecured medical debt. He also intends to pay in full his indebtedness for past-due taxes.

## DISCUSSION

In its Appeal Brief, Securities America argues that the Bankruptcy Court erred in denying its Motion to Dismiss and that this Court should dismiss with prejudice Tallman's chapter 7 petition.[2] Securities America contends that the Bankruptcy Court erred in the following respects:

---

[2] Securities America premised its Motion to Dismiss on 11 U.S.C. §§ 105, 707(a), and 707(b). However, the presentations of the parties at the March 4 and 5, 2008, trial and in their post-trial briefs focused on Securities America's bad faith/for cause claim under § 707(a). The Bankruptcy Court determined that § 707(b) did not apply because Tallman's debts are not primarily consumer debts and that § 707(a) is "sufficiently capacious that there should be no need to resort to [the § 105(a)] reservoir of equitable authority." (Bankr. Ct. Decision on Mot. to Dismiss 1 n.1, DE 2-4.) Because the Bankruptcy Court's rulings on the §§ 105(a) and 707(b) grounds are not challenged in this appeal, the Court will not address those grounds asserted by Securities America in its Motion to Dismiss.

failing to consider as significant factors Tallman's singling out of Securities America and his filing of bankruptcy in direct response to the arbitration award; failing to find that Tallman's income is sufficient to pay a substantial portion of his debt; and failing to consider as factors Tallman's pre-petition transfers of assets and income, Tallman's failure to make a full and candid disclosure in his bankruptcy filings, and Tallman's failure to make significant lifestyle adjustments or efforts to repay his debts. In arguing that the Bankruptcy Court's ruling should be affirmed, Tallman responds that the Bankruptcy Court applied the correct legal standard, that Securities America failed to argue that the Bankruptcy Court applied the incorrect legal standard, that Securities America failed to demonstrate that any of the factual findings are clearly erroneous, and that Securities America waived its claim that Tallman's petition should be dismissed with prejudice by failing to raise that issue in its original motion, at trial, or in any trial brief.[3] In reply, Securities America reiterates its argument that the Bankruptcy Court failed to apply the correct legal standard and that this Court has authority to consider dismissing Tallman's petition with prejudice because the Bankruptcy Court raised the issue *sua sponte*. In addition to reemphasizing its points regarding Tallman's singling out of Securities America, sufficient income, pre-petition transfers of assets and income, misleading bankruptcy filings, and failure to adjust his lifestyle, Securities America underscores that Tallman corrected his

---

[3] Counsel for Tallman begins the argument section of his Brief with a recitation of counsel's experience in bankruptcy matters. In his Brief, counsel for Tallman adds that "[t]his case presents a classic example of a creditor disgruntled that [its] debt will be discharged attempting t[o] extract one last ounce from the Debtor just because it does not understand the complete process. If the arguments of Appellant are to be accepted, then it is a return to the days of Debtor's prison." (Tallman's Brief 9, DE 19.) The Court will disregard Tallman's counsel's assessments regarding his and opposing counsel's experience and understanding of bankruptcy law and procedure. It should go without saying that the Court's ruling in this appeal is based upon its view of the legal issues raised in the parties' submissions, not upon issues related to the status, the experience level, or the purported understanding of any of the parties or their counsel. Considering that there is no issue before the Court that even hints of possible imprisonment or incarceration for debt, the Court finds Tallman's argument regarding debtors' prison baseless.

9

bankruptcy filings only after extensive examination by the chapter 7 trustee and Securities America and that the chapter 7 trustee supported Securities America's Motion to Dismiss. In addition to the parties' briefs and the materials included in the record on appeal, the Court had the opportunity to hear the presentations of counsel at the June 25, 2009, hearing. After carefully considering the materials submitted, the presentations made by the parties, and the applicable standards, the Court is persuaded that the Bankruptcy Court committed reversible error in its ruling denying Securities America's Motion to Dismiss.

Section 707(a) of the Bankruptcy Code provides as follows:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including–
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a). The three examples of "cause" set forth in this section are illustrative rather exhaustive, *United States v. Pedigo*, 329 B.R. 47, 48 (S.D. Ind. 2005), and thus courts are not limited to these enumerated examples in determining whether there is cause justifying dismissal. Additionally, as the Bankruptcy Court noted, a majority of courts has held that a debtor's bad faith can constitute cause for dismissal under § 707(a). *See Pedigo*, 329 B.R. at 48–49 (collecting cases, including *In re Tamecki*, 229 F.3d 205, 207 (3rd Cir. 2000) ("Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing."); *In re Zick*, 931 F.2d 1124, 1127 (6th Cir. 1991) ("We are persuaded that there

is good authority for the principle that lack of good faith is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court.")); *see also Perlin v. Hitachi Capital Am. Corp.*, 497 F.3d 364, 369 (3d Cir. 2007) (reaffirming *Tamecki* holding); *In re Smith*, 286 F.3d 461, 465 (7th Cir. 2002) (finding that 11 U.S.C. § 1307(c), which like § 707(a) does not include bad faith as an enumerated example of cause but similarly provides for dismissal "for cause," permits a bankruptcy court to dismiss a case based upon a debtor's bad faith in filing the petition). The Bankruptcy Court also correctly noted that whether bad faith exists requiring dismissal of a particular case is a matter committed to the Bankruptcy Court's discretion and that the Bankruptcy Court applies the "totality of the circumstances" test in determining whether there is bad faith in the context of a chapter 7 filing.[4]

---

[4] Although the Bankruptcy Court recognized this majority position regarding bad faith/for cause dismissal under § 707(a), the Bankruptcy Court's discussion of the applicable standards and its analysis suggest that the Bankruptcy Court prefers the approach of the Eighth and Ninth Circuits in *In re Huckfeldt*, 39 F.3d 829 (8th Cir. 1994), and *In re Padilla*, 222 F.3d 1184 (9th Cir. 2000), to the approach of other federal courts. This becomes more apparent in footnote 2 of the Bankruptcy Court's opinion in which the court stated:

> The court will readily acknowledge that a number of Chapter 7 cases are filed in bad faith as the court has defined it—where the debtor files without the intent or desire to obtain relief that is available under Chapter 7 and has, instead, some other goal in mind, such as simply to delay creditors. Yet, most of those cases are readily disposed of, either through the automatic dismissal provision of § 521(i), or for "cause" under § 707(a), such as for the failure to file required statements and schedules or to appear for the [§] 341 meeting of creditors, without being specifically labeled as filed in "bad faith." This is part of the reason the [Eighth] Circuit concluded that the proper focus of the inquiry under § 707(a) should be on whether the debtor's actions constitute "cause" for dismissal and not whether they should be characterized as bad faith.

(Bankr. Ct. Decision on Mot. to Dismiss 7 n.2 (citing *Huckfeldt*, 39 F.3d at 832, and *Padilla*, 222 F.2d at 1192–93), DE 2-4.)

In *In re Huckfeldt*, the Eighth Circuit opined that while "some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith[,] . . . framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7." *Id.*, 39 F.3d at 832. The court concluded that "the § 707(a) analysis is better conducted under the statutory standard, 'for cause[,]' [and i]f the bankruptcy court elects instead to act under the inherent judicial power to punish a bad faith litigant, that action should not be taken under § 707(a)." *Id.* Nevertheless, the court in *In re Huckfeldt* affirmed the dismissal of a debtor's chapter 7 petition based upon the debtor's manipulation of his earnings and his filing for the purpose of frustrating a divorce decree and pushing his ex-wife into bankruptcy, rather than to obtain a just liquidation by composition with creditors. *Id.* at 832–33. In *In re Padilla*, the Ninth Circuit "discarded the 'bad faith' label" in favor of simply determining whether the debtor's conduct constitutes "cause" for dismissal under § 707(a). *Id.*, 222 F.3d at 1193.

As a result of this preference, the Bankruptcy Court may have an unduly narrow understanding of the "for

11

In its Decision, the Bankruptcy Court discussed at length what bad faith is and the subjectivity inherent in the analysis. Along the way, the Bankruptcy Court opined that "one man's trash can be another man's treasure and bad faith, like beauty, is often in the eye of the beholder." (Bankr. Ct. Decision on Mot. to Dismiss 2, DE 2-4.) The Bankruptcy Court observed that some courts, in an effort to bring some objectivity to the analysis, had developed lists of factors to consider, but the Bankruptcy Court was dismissive of such lists as "not particularly helpful." (Bankr. Ct. Decision on Mot. to Dismiss 3, DE 2-4.) The Bankruptcy Court insisted that the analysis must focus on the true purpose of the inquiry, not "a mass of individual details"—as the Bankruptcy Court put it, the analysis is not an exercise in "tallying up various pluses and minuses." (Bankr. Ct. Decision on Mot. to Dismiss 3, DE 2-4.) The Bankruptcy Court likened a bad faith analysis oriented only to these various factors to travelers "navigating by sign posts or landmarks without knowing where they are located in relation to where [they] are going." (Bankr. Ct. Decision on Mot. to Dismiss 3, DE 2-4.) After explaining that travelers "can do so all day long, but unless [they] know where [their] destination[s] [are] in relation to the signs [they] are following[,] [they] could be going in the wrong direction, or simply going in circles," the Bankruptcy Court emphasized that "[c]ontext is all important." (Bankr. Ct. Decision on Mot. to Dismiss 3, DE 2-4.) The Bankruptcy Court also drew upon the discipline of art criticism to make the point that finding bad faith, like appreciating the beauty of a masterful painting, is not a mechanical exercise. After discussing Vincent Van Gogh's *The Starry Night*

---

cause" grounds under § 707(a), and this may have resulted in the Bankruptcy Court applying an overly-restrictive version of the "totality of the circumstances" test that did not permit the Bankruptcy Court to consider the circumstances of this case in their entirety. Thus, as the Bankruptcy Court expressly stated, it would not (and did not) consider a number of circumstances in ruling on Securities America's Motion to Dismiss. The Court will return to this issue later in this Opinion and Order.

and pasting a clip-art copy of the painting into its Decision, the Bankruptcy Court stated:

> In addition to the mechanical recitation of colors and visual elements, less tangible components such as context, placement, style and technique also contribute to the work's overall effect, and without them it would just be so many blobs of color, devoid of meaning or appeal. The same is true of bad faith. It is much more than a mechanical recitation of factors.

(Bankr. Ct. Decision on Mot. to Dismiss 4, DE 2-4.)

As the Bankruptcy Court approached its conclusion regarding the ultimate question in a bad faith inquiry, it noted that some courts had described the bad faith inquiry as "a matter of smell," others as a question of whether the debtor lacked honesty or neglected or refused to "fulfill an obligation because of some interested or sinister motive," and still others as an analysis of whether the debtor is in bankruptcy with an intent to receive the sort of relief Congress made available and is willing to responsibly carry out its duties. (Bankr. Ct. Decision on Mot. to Dismiss 4, DE 2-4.) Emphasizing that "the underlying purpose of any bad faith inquiry is to protect the integrity of the bankruptcy process," the Bankruptcy Court concluded that the ultimate question is "whether the petition was filed with the intent and desire to obtain the relief that is available under a particular chapter of the Bankruptcy Code, through the means that Congress has specified, or whether the debtor is pursuing some other goal." (Bankr. Ct. Decision on Mot. to Dismiss 5, DE 2-4.)

Nevertheless, before to turning to its analysis of the alleged bad faith in this particular case, the Bankruptcy Court included additional discussion regarding its view of the "totality of the circumstances" inquiry and the various factors to be considered. The court noted that the lists of factors had migrated into the chapter 7 analysis from their original home, that this migration is not inherently wrong, but that their origin and the different purposes behind chapter 7 and

13

chapters 11, 12, and 13 should be remembered. Accordingly, the Bankruptcy Court concluded that "particular factors may have a different weight or a different relevance under different chapters of the Bankruptcy Code." (Bankr. Ct. Decision on Mot. to Dismiss 6, DE 2-4.) The court then explained some of the differences among various chapters of the Bankruptcy Code.

In its Decision, the Bankruptcy Court addressed (albeit incompletely) the following factors highlighted by Securities America: (1) Tallman has singled out his obligation to Securities America for discharge, his sole purpose in filing his petition was to discharge that particular debt, and Tallman intends to reaffirm or repay all of his other debts; (2) Tallman filed his petition in direct response to the arbitration award and Securities America's efforts to enforce that award; and (3) Tallman has the ability to repay a substantial portion of his debt. As to the first and second, the Bankruptcy Court accepted these facts as true, but asked rhetorically: "so what?" (Bankr. Ct. Decision on Mot. to Dismiss 7–8, DE 2-4.) As to the first, the Bankruptcy Court focused largely upon the reaffirmance of debt issue, but did not consider all of the factors in this set (including Tallman's singling out of Securities America) in light of all circumstances. As to the second factor, the Bankruptcy Court opined that a debtor may contest the validity of a creditor's claims before a non-bankruptcy tribunal and then, depending upon the outcome, seek relief in bankruptcy, but the Bankruptcy Court's analysis does not reflect its consideration of this factor in light of other circumstances suggesting Tallman's bad faith. As to the third factor, the Bankruptcy Court assumed that it was true. However, relying on *Perlin*, 497 F.3d at 374, the court indicated that a debtor's ability to pay debts counts for "comparatively little" in the context

of a § 707(a) inquiry and that "[o]ther factors are more important."[5] (Bankr. Ct. Decision on Mot. to Dismiss 9, DE 2-4.) Rather than considering the evidence in the record of Tallman's ability to repay a portion of his debt (whether substantial or otherwise) and analyzing this factor in light of the totality of facts and circumstances, the Bankruptcy Court nitpicked over the term "substantial portion" and what information regarding expenses would be relevant to determining a debtor's ability to repay a substantial portion of his debt. As a consequence, the Bankruptcy Court failed to fully and fairly analyze the evidence before it regarding Tallman's income and expenses.

The Bankruptcy Court indicated that the following circumstances presented by Securities America are addressed by § 548 and § 727 of the Bankruptcy Code: (4) Tallman transferred property—primarily commission income and corporate stock—to put it beyond the reach of

---

[5] The Bankruptcy Court is correct in indicating that the Third Circuit in *Perlin* stated that "a bankruptcy court's ultimate finding of bad faith may not be based exclusively or primarily on a debtor's substantial financial means," but the Third Circuit did not use the term "comparatively little." *Perlin*, 497 F.3d at 374. Saying that a bad faith finding "may not be based exclusively or primarily on a debtor's substantial financial means" is not the same as saying that the factor "counts for comparatively little," and thus the Bankruptcy Court is misreading *Perlin*. The Third Circuit in *Perlin* approved of bankruptcy courts considering "a debtor's substantial income and expenses together with other factors in assessing good faith," *id.* at 371, and the Third Circuit added the following discussion of the income/expense factor, which will be relevant to the Bankruptcy Court's consideration of Securities America's Motion to Dismiss on remand:
> Although a debtor's ability to repay is not, itself, sufficient cause for dismissal, "[w]hen a debtor capable of at least partial repayment has made every effort to avoid payment of an obligation, lack of good faith sufficient to justify dismissal may be found. . . .
> . . .
> Hence, as *Tamecki* illustrates, in deciding a motion to dismiss based upon a debtor's lack of good faith, a bankruptcy court may consider all of the facts and circumstances surrounding the debtor's filing of the bankruptcy petition, including the reality of the debtor's financial situation.
> For all of the foregoing reasons, we conclude that, in deciding a motion to dismiss under section 707(a), a bankruptcy court may consider a debtor's income and expenses together with other factors in assessing good faith. The recent modifications to counterpart-section 707(b) do not impliedly preclude a bankruptcy court from considering income-and-expense factors, and, as discussed and qualified above, consideration of income-and-expense factors is consonant with section 707(a) itself.

*Id.* at 374–75 (quoting *In re Zick*, 931 F.2d 1124, 1127 n.3 (6th Cir. 1991), and discussing *In re Tamecki*, 229 F.3d 205). From the Bankruptcy Court's Decision, it is evident that the court did not give full consideration to the reality of Tallman's financial situation in ruling on Securities America's Motion to Dismiss. Additionally, the Bankruptcy Court did not specifically identify what other factors it considered to be more important or how these other factors actually figured in its analysis of Tallman's alleged bad faith in this case.

15

creditors; (5) Tallman failed to accurately disclose his income and assets in his original bankruptcy schedules and statement of affairs; and (6) Tallman failed to make any significant lifestyle adjustments that would permit him to pay. Regarding the fourth and fifth factors, the court stated:

> Including conduct redressed by other portions of the Bankruptcy Code as part of the bad faith dismissal analysis distorts the structure Congress designed when it evaluated and created solutions to particular problems. It also risks disrupting the balance between debtors and creditors that Congress strove to achieve when it created those solutions, by allowing debtors to avoid the statutory penalties for misconduct. . . . [L]et provisions like § 727 do the job they were designed for and use cause under § 707(a) to address other concerns. . . .
> In light of these considerations, the court concludes that when analyzing whether a Chapter 7 debtor is guilty of bad faith constituting cause for dismissal under § 707(a), the court should not consider conduct that is redressed by other portions of the Bankruptcy Code, such as that warranting the denial of discharge under § 727(a). . . . If a debtor is guilty of conduct condemned by § 727(a), the proper response is to seek denial of discharge, not dismissal as a bad faith filing.

(Bankr. Ct. Decision on Mot. to Dismiss 7–8, DE 2-4.) The Bankruptcy Court thought that the same is true of conduct addressed by § 548. From the Bankruptcy Court's analysis of the sixth factor, it is apparent that the court approached that factor with the same basic perspective. As a consequence, the Bankruptcy Court refused to consider the fourth, fifth, and sixth factors cited by Securities America in deciding the Motion to Dismiss. The Bankruptcy Court's decision to disregard these factors in its bad faith analysis is surprising given its use of unique illustrations to highlight the importance of considering factors such as context, placement, style, and technique, in addition to more tangible factors such as signposts, landmarks, colors, and visual elements.

The Bankruptcy Court's inadequate treatment of several factors put forward by Securities America and disregard of other factors are inconsistent with a fair application of the "totality of

16

the circumstances"/bad faith analysis under § 707(a). This Court does not quibble with the Bankruptcy Court's understanding that Congress designed § 548 and § 727 to provide solutions to particular problems. This does not, however, justify the Bankruptcy Court's decision to disregard facts and circumstances that are relevant both to a bad faith analysis under § 707(a) and to complaints pursuant to § 548 and § 727—the totality of facts and circumstances should be part of the bad faith analysis. As noted above, a majority of federal courts has determined that bad faith constitutes cause under § 707(a) and can justify dismissal, and the determination whether a debtor acted in bad faith is to be made based on the "totality of the circumstances." This too is by design of Congress, as another bankruptcy judge has explained in the following conclusions:

> (1) Bankruptcy Courts are courts of equity; (2) bankruptcy is a privilege, not a right; (3) Chapter 7 is for the honest but unfortunate debtor who is seeking a fresh start, not a head start; and (4) it is inconceivable that when Congress enacted Section 707(a), it did not intend for the Bankruptcy Courts to have the discretion, in appropriate circumstances where there has clearly been a bad faith filing, to find that there was cause to dismiss the case. There are and will be debtors whose pre-petition and/or post-petition conduct is such that it is appropriate that their cases be dismissed without the need for the Court and the Bankruptcy System to be required to expend the time and resources necessary to conduct, hear or determine: (a) Section 523 and Section 727 causes of action; (b) objections to exemptions; (c) avoidance of transfer causes of action; or (d) any number of other actions, proceedings and hearings in order to administer and bring to conclusion the case of such a bad faith filer.

*In re Paul W. O'Brien*, 328 B.R. 669, 674–75 (Bankr. W.D. N.Y. 2005). The judge in that case went on to identify fourteen factors it would consider "when applying a totality of the circumstances analysis under Section 707(a), as well as any and all other factors [that] may bear

on whether a debtor's filing was in bad faith or good faith."[6] *Id.* at 675 (citing cases). The Court also agrees with the Third Circuit that the § 707(b) bad faith inquiry is fact intensive, "requir[ing] consideration of all of the facts and circumstances surrounding the debtor's filing for bankruptcy."[7] *Perlin*, 497 F.3d at 372.

Because the Bankruptcy Court disregarded facts and circumstances identified by Securities America and presented in the materials before that court and because the Bankruptcy Court did not properly apply the "totality of the circumstances" test, the Bankruptcy Court's Decision and Order denying Securities America's Motion to Dismiss must be reversed, and this matter will be remanded to the Bankruptcy Court to conduct proceedings consistent with this Opinion and Order.[8]

---

[6] It is for the Bankruptcy Court (and not this Court) to determine as an initial matter whether Tallman's filing was in bad faith or good faith based upon a consideration of the totality of the circumstances, the factors identified by the court in *In re Paul W. O'Brien* and by other courts, and any and all other facts and circumstances that may bear upon the question. Consequently, the Court, at this time, declines Securities America's invitation to dismiss Tallman's case with prejudice and will not now address the merits of Securities America's Motion to Dismiss. The Court does, however, note that the record on appeal contains a substantial body of evidence that raises real questions about Tallman's purported good faith and that the chapter 7 trustee thought Tallman's case was "so serious that it does rise to [the §] 707[(a) level]" based upon Tallman's alleged bad faith conduct. (Mar. 5, 2008, Tr. 46, DE 15.)

[7] The *Perlin* court identified a number of factors to consider and reviewed a range of cases in which the presence or absence of factors showed or did not show bad faith on the part of the debtor. *See id.*, 497 F.3d at 373–74.

[8] The Bankruptcy Court's ruling is also troublesome because it had earlier (on January 14, 2008) denied Securities America's Motion for Extension of Time for Filing Discharge Objections and Dischargeability Complaints and Notice Thereof. Although the Bankruptcy Court's Order denying Securities America's Motion for Extension of Time is not properly before the Court for review in this appeal (and accordingly the Court will not issue a ruling on that order of the Bankruptcy Court), the parties in their submissions have discussed that Motion and the Bankruptcy Court's ruling, and it is part of the procedural context surrounding the Bankruptcy Court's handling of Securities America's Motion to Dismiss.

In a chapter 7 case, Federal Rule of Bankruptcy Procedure 4004(a) requires a complaint objecting to discharge under § 727(a) be filed no later than sixty days after the first date set for the meeting of creditors. Rule 4004(b) provides that, "[o]n motion of any party in interest, after hearing on notice, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be filed before the time has expired." *See also* N.D. Ind. L.B.R. B–4004-1 (providing additional procedural requirements).

On October 10, 2007, the first meeting of creditors under § 341 occurred. On November 28, Securities America filed its Motion to Dismiss, Brief in Support, and other supporting materials. On December 6, four days

# CONCLUSION

For the foregoing reasons, the Court finds that the Bankruptcy Court erred in failing to properly apply the "totality of the circumstances" standard in ruling on Securities America's Motion to Dismiss. Thus, it is necessary to reset this case for the Bankruptcy Court to give fair and proper consideration to Securities America's Motion to Dismiss and its claim that Tallman

---

before the expiration of the sixty-day period, Securities America filed its Motion for Extension of Time, asking that the Bankruptcy Court grant it up to March 14, 2008, in which to file complaints objecting to Tallman's discharge pursuant to § 727 and complaints to determine the dischargeability of individual debts pursuant to § 523. Securities America pointed to its pending Motion to Dismiss, the scheduled hearing on the Motion to Dismiss, the fact that a grant of its Motion to Dismiss would obviate the need to file complaints, and judicial economy. The March 14 date proposed by Securities America was sixty days after the scheduled hearing before the Bankruptcy Court on Securities America's Motion to Dismiss. On December 19, 2007, Tallman filed an Objection to Securities America's Motion for Extension of Time. Tallman argued that Securities America had not alleged any cause. On January 11, 2008, Securities America filed a Brief in Support of its Motion for Extension of Time, in which it supplemented its request with discussion of points and authorities. On January 14, the Bankruptcy Court conducted a hearing and set Securities America's Motion to Dismiss for trial on March 4 and 5, 2008. The Bankruptcy Court also denied Securities America's Motion for Extension of Time and issued an order to that effect. The Bankruptcy Court thought that the "cause" cited by Securities America (its pending Motion to Dismiss and judicial economy) was "a self[-]created cause," that "cause" should arise independent of the need to finish investigation, and that "cause" under Rule 4004(b) should be something other than what the creditor has filed (such as a motion to dismiss for bad faith/cause). In other words, the Bankruptcy Court found that Securities America had "cause," but the Bankruptcy Court disregarded the asserted cause because it did not think that cause counted. (Jan. 14, 2008, Tr. 15, DE 10.)

As another District Court in this Circuit has noted, courts have interpreted "cause" to mean that creditors must exercise at least a reasonable degree of due diligence or that unusual circumstances justify extension. *In re Loefgren*, 305 B.R. 288, 290 (W.D. Wis. 2003) (quotation marks and citations omitted). A bankruptcy court's determination whether "cause" exists is reviewed for an abuse of discretion. *Id.*

In this case, Securities America timely filed its Motion for Extension of Time, and it came forward with "for cause" grounds for granting the Motion. Securities America exercised a reasonable degree of due diligence in investigating facts (including participating in the first meeting of creditors and the Rule 2004 examination), and at least some of the facts relevant to its Motion to Dismiss would also be relevant to complaints brought pursuant to § 523 and § 727. Additionally, the unusual circumstance of the pending Motion to Dismiss justified an extension, and Securities America's Motion to Dismiss, brought pursuant to 11 U.S.C. § 707(a) based upon Tallman's alleged bad faith in filing his chapter 7 petition, is not properly characterized as a "self-created cause." Rather, Securities America's Motion to Dismiss, which it supported with a substantial body of evidence and which was not brought in bad faith, is premised upon a statutorily-authorized method for bankruptcy courts to dismiss cases for cause. Additionally, when the Bankruptcy Court conducted the trial on March 4 and 5, 2008, and issued its Decision and Order on November 12 denying Securities America's Motion to Dismiss, it had already foreclosed Securities America's opportunity to file complaints pursuant to § 523 and § 727 when it, on January 14, denied Securities America's Motion for Extension of Time. Thus, the Bankruptcy Court's refusal to consider all of the facts and circumstances highlighted by Securities America (based upon the court's view that these factors should have been the subject of complaints brought pursuant to § 523 and § 727, not a motion to dismiss), coupled with the Bankruptcy Court's ill-advised denial of Securities America's Motion for Extension of Time, prevented Securities America from being heard on these issues because the time had expired for Securities America to file such complaints, even though Securities America had done its part in timely bringing these issues to the Bankruptcy Court's attention.

filed his chapter 7 petition in bad faith. The Court, therefore, REVERSES the Bankruptcy Court's Order and Decision denying Securities America's Motion to Dismiss pursuant to 11 U.S.C. § 707(a) and REMANDS this case for further proceedings consistent with this Opinion and Order.

    SO ORDERED on September 30, 2009.

                                               /s Theresa L. Springmann
                                               THERESA L. SPRINGMANN
                                               UNITED STATES DISTRICT COURT